**FIRST TRUST CO. OF OMAHA et al. v. ALLEN, Collector of Internal Revenue.**

No. 2531.

District Court, D. Nebraska, Omaha Division.

July 14, 1931.

WOODROUGH, District Judge.

George A. Hoagland died seized of lands in Missouri, Nebraska, and Iowa, and his executors were required to pay estate taxes in respect to the value thereof. The taxes were laid under section 402 (a) of the Revenue Act of 1921 (42 Stat. 278) and were paid under protest. This suit is to recover the money back on the ground that no lawful tax could be laid against the plaintiffs under that section. Its relevant language is:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and

the expenses of its administration and is subject to distribution as part of his estate."

The District Court in Missouri, the Circuit Court of Appeals in this circuit, and the Supreme Court held in the case of Harrelson that the section does not authorize any tax in respect to lands of decedents located in the state of Missouri [28 F.(2d) 510; 35 F.(2d) 416; 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156]. This court is clearly bound by those decisions to award judgment to the plaintiffs here for the part of their payment attributable to the lands in Missouri, and it will be so ordered. I am not persuaded, however, that the decisions conclude this court from expressing its opinion as to the Nebraska and Iowa lands. The ground of decision in the Harrelson Case was that in Missouri the lands of a decedent are not subject to the payment of the expenses of the administration of the estate, and for that reason their value should not be included to make up the gross valuation for estate taxes. Though the decision is binding on this court and must be followed here in so far as the same facts are involved, considerations concerning the purport and intent of the statute are presented here which the opinions of the three courts and the brief of the government in the Harrelson Case disclose were not called to the attention of those courts. In such situation it is the duty of this court to assert its own judgment thereon. Webster v. Fall, 266 U. S. 507, 45 S. Ct. 148, 69 L. Ed. 411; U. S. v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799.

Notwithstanding certain discussions of the statute found in the opinions of the courts in the Harrelson Case following what was said about the same statute in the case of U. S. v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461, it appears to me that section 402 of the Revenue Act of 1921 with its subdivisions taken together with section 403 (42 Stat. 279) should be interpreted so as to justify and compel the taxes laid in respect to Mr. Hoagland's Nebraska and Iowa lands. The estate tax sections as I read them express the intent of Congress to impose a tax on the net estate of decedents, by determining the value of the gross in a very broad inclusive way, adding many items that are not within the ordinary concept of decedents' estates, and then later on specifying particularly the deductions to arrive at the taxable net. To accomplish the obvious purpose, section 401 (42 Stat. 277) starts out and imposes the tax "upon the

transfer of the net estate of every decedent." Section 402 then opens with the declaration that to value the gross estate there shall be included "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated"—these are inclusive words, but not inclusive enough to answer the purpose of Congress. That purpose as stated was to carry this tax far beyond the ordinary concept of decedents' estates. Congress was determined to include in this gross valuation interests of surviving spouses and gifts causa mortis and properties which decedent had transferred in trust during his lifetime and properties held in entirety with other persons and even insurance money—things that are in no lawyer's sense any part of a decedent's estate. To accomplish this purpose and draw these unrelated things together under the general tax imposition contained in the opening paragraph of section 402, Congress follows up the general declaration that the gross valuation for tax shall include all property with a phrase very apt for its object, namely, "to the extent." It says, in substance, that the gross value of decedent's estate shall be determined by including the value of all property "to the extent" of property given away by him and to the extent of the proceeds of life insurance policies and to the extent of the interest of a surviving spouse. The phrase admits of no ambiguity and lends itself perfectly to the broadening out of the opening sentence of the section as was intended.

Congress uses the same phrase to introduce subdivision a. It says all the property "to the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate *and* the expenses of its administration *and* is subject to distribution." Here it is noted that the conjunctive "and" is used between "charges against his estate" and "expenses of its administration." Observing how the phrase "to the extent" is used throughout to expand and broaden and bring in the extraneous, it seems patent to me that the real function of the conjunctive "and" in the clause is to amplify the phrase "to the extent" and increase "the extent." It all means, as I view it, the value of the gross estate shall be determined by including the value of all the property of the decedent "to the extent of the interest of the decedent * * * which * * * is subject to the payment of charges * * * and [to the extent that it] is subject to the

expenses of its administration and [to the extent that it] is subject to distribution as part of his estate."

Such an interpretation effectuates the intention of Congress to lay a uniform tax nationally and does not offend against the context.

The alternative reading has apparently appealed to the jurists who have studied the section. That alternative is to read the conjunctive "and" as the equivalent of a proviso. They read the whole: "The value of the gross estate shall be determined by including the value of all the property to the extent of the interest of the decedent * * * which * * * is subject to charges against his estate (*and* provided) it is subject to the expenses of administration * * * (*and* provided) it is subject to distribution." It is not to be argued that the conjunctive "and" never approximates a proviso. But certainly not always, and it does not appear to me to be according to the intent of Congress in this instance.

Inasmuch as this consideration of the real meaning of the statute has been urged upon this court and apparently was not presented to the other courts when the matter was studied, I have felt called upon to state my conclusion. I do not, however, decide the case upon it.

It appears clear to me that, under the Nebraska and the Iowa statutes, lands belonging to a decedent at the time of his death are subject to the expenses of its administration and are also subject to distribution as part of his estate. It is true that in the matter of procedure and as concerning only the order in which the different kinds of assets shall be applied in the course of administration personal property must be used first and then realty. But both are to be resorted to if necessary. That being so, both are "subject" within the meaning of the statute.

It is argued that in particular estates like this one, where there is plenty of personalty, the lands are not "subject" to the charges against the estate or expenses of administration because all such disbursements will be made out of the personalty and the lands will not be so applied. The argument appears to me to be without merit.

Judgment should be awarded the plaintiffs for the amount paid in respect of Missouri lands only, and judgment for defendant as to the other claims.