SAFE DEPOSIT & TRUST CO. OF BALTI-
MORE v. TAIT, Collector of Internal
Revenue.

No. 5149.

District Court, D. Maryland.

Oct. 30, 1934.

Charles McHenry Howard, of Baltimore,
Md., for plaintiff.

John A. Rees and Julian G. Gibbs, Sp.
Assts. to Atty. Gen., and Bernard J. Flynn,
U. S. Atty., and G. Randolph Aiken, Asst.
U. S. Atty., both of Baltimore, Md., for de-
fendant.

CHESNUT, District Judge.

In this case the Safe Deposit and Trust
Company of Baltimore sues, as surviving ex-
ecutor of Celeste M. W. Hutton, late of
Baltimore City, deceased (who died February
25, 1925), to recover an alleged overpayment
of federal estate taxes under the Estate Tax
Act of 1924, c. 234 (43 Stat. 303, 304), which
for the computation of the tax, provides that
(section 302 (a, c), 26 USCA § 1094 note):

"The value of the gross estate of the de-
cedent shall be determined by including the
value at the time of his death of all prop-
erty, real or personal, tangible or intangible,
wherever situated—

"(a) To the extent of the interest there-
in of the decedent at the time of his death
which after his death is subject to the pay-
ment of the charges against his estate and the
expenses of its administration and is subject
to distribution as part of his estate;   *   *   *

"(c) To the extent of any interest there-
in of which the decedent has at any time made
a transfer, or with respect to which he has
at any time created a trust, in contemplation
of or intended to take effect in possession
or enjoyment at or after his death, except in
case of a bona fide sale for a fair considera-
tion in money or money's worth."

The executors duly filed their federal es-
tate tax return showing a net tax due of
$104,357.70, of which amount $35,000 was
paid December 29, 1925, and $69,357.70 on
February 27, 1926. Subsequently upon an
audit and review of the return the Collector
demanded an additional tax in the amount of
$29,195.22, which was paid January 21; 1927,
with the additional sum of $3,173.80 for in-
terest; but still later the Collector refund-
ed certain sums consisting of $2,178.48 with
interest of $145.18 on May 7, 1928, and on
July 18, 1928, $1,715.93 together with in-
terest of $141.22. The total value of the
estate as determined by the Bureau of In-
ternal Revenue was $1,763,939.31.

On January 20, 1931, the executors filed a claim for refund of taxes in the amount of $92,298.10. This was within four years from the date of the *last* payment on account of the tax made by the executors but more than four years after the *prior* payments. The Commissioner rejected the petition for refund by letter dated May 14, 1931; and this suit was instituted May 10, 1933. The amount of the alleged overpayment now sued for is $84,418.10 with interest thereon at 6%.

The case was tried to the court without a jury by written stipulation. The controversy as to the amount of the proper tax relates to the inclusion by the Commissioner of two items of property as part of the gross estate which plaintiff contends were improperly included. They are (1) the value of the decedent's Maryland real estate owned in fee simple; and (2) the value of certain securities transferred by the decedent to the Safe Deposit and Trust Company of Baltimore as Trustee by deed of trust dated October 17, 1916. Different considerations apply to these two items and they will be discussed separately.

■ *The Maryland Real Estate:* The value of this as determined by the Commissioner was $708,796.77. The plaintiff says that it was not taxable. Counsel for both parties agree that the legal situation with regard to this item is precisely the same as that which existed in the federal estate tax litigation in this court in the estate of Thomas H. Bowles, of which the Safe Deposit and Trust Company of Baltimore was executor. See Safe Deposit & Trust Company of Baltimore v. Tait (D. C.) 54 F.(2d) 387; Id. (D. C.) 3 F. Supp. 51. It was there held, after a review of the Maryland law and on the authority of Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156, that Maryland real estate under the Estate Tax Law then in force was not properly to be included in the valuation of the gross estate. That case arose under the Revenue Act of 1921, § 402 (a), 42 Stat. 278, which is the same in wording as the Revenue Act of 1924, § 302 (a), 26 USCA § 1094 note. The judgment of this court was affirmed by the Circuit Court of Appeals for this Circuit, 70 F.(2d) 79, and certiorari was not applied for. While the defendant on the record contends the item is taxable, no argument or new considerations have been advanced in this case in support of the contention. As I regard the decision of the Court of Appeals as establishing the law of the case, no fur-

ther discussion is necessary. The item is held not taxable.

*The property covered by the deed of trust* involves other considerations. Whether this item was properly held taxable by the Commissioner is in its general aspects quite similar to one of the questions involved in the recent decision of this court in Safe Deposit & Trust Company of Baltimore as Executor of Horace Abbott Cate v. Tait, 7 F. Supp. 40 (now pending on appeal).

The value of the securities covered by the deed of trust was determined by the Commissioner to be $292,600 but the Commissioner, in determining the tax, included in the valuation of the gross estate on account of this item of property, only Mrs. Hutton's reserved beneficial life interest which he valued at $58,140.38. However, now under the applicable doctrine of Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293, it is contended by the defendant here that the whole value of the securities covered by the deed of trust was properly taxable and therefore the amount of any recovery to which the plaintiff may be entitled on account of the improper inclusion of the Maryland real estate must be off-set by the additional tax which should have been paid on account of this item. If this particular property is taxable, it is by virtue of section 302 (c) above quoted. It is not contended that the transfer was made in contemplation of death, but it is said that it was "intended to take effect in possession or enjoyment at or after" death. The original ruling by the Commissioner valuing the reserved life interest of Mrs. Hutton at $58,140.38 was made long before the decision of the Supreme Court in May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244, and it is not now seriously contended by the defendant that the principle which seems to have been applied by the Commissioner is sustainable in view of that decision. In rejecting the petition for refund as to this item, the Commissioner said: "The deed of trust referred to * * * provides that in the event of certain contingencies 'then the share of the corpus or principal of said trust estate shall be paid over and delivered by the trustee to the said Celeste M. W. Hutton, free, clear and discharged of any and all trusts created' thereunder, so that the trust property in question is deemed not to have been transferred irrevocably except at the death of the decedent." And it is substantially on the point thus made by the Commissioner that the defendant now bases the con-

tention that the whole value of the trust property must be included.

■ The deed of trust is in conventional form whereby certain designated securities were transferred and delivered to the trustee upon certain designated trusts (without power of revocation), the substance of which was as follows: during the lifetime of Mrs. Hutton, to pay $2400 per annum to her daughter, Elsie C. Hutton; $4,000 annually to her daughter, Lucette W. Pritchard; $2400 per annum to her daughter, Una L. Hutton, and $1500 annually to her son, Reginald W. Hutton; and the remainder of the net income to be paid to Mrs. Hutton herself. Upon the death of Mrs. Hutton the trustee was directed to deliver free of trust, two-sevenths of the principal to each of Mrs. Hutton's three daughters and one-seventh to her son, provided they respectively survived her; otherwise to pay the respective proportions to such persons as the children respectively might designate by exercising a power of appointment by last will and testament; and in the event of the death of any of said children prior to the death of Mrs. Hutton without having executed the power of appointment by will, but leaving issue surviving, then the said child's share of the corpus was to be delivered to the issue of the child so dying *per stirpes,* and the income payable to the children respectively during the lifetime of Mrs. Hutton was to be paid to those who might become entitled to the corpus at her death. It was further provided with respect to the several shares and interests of the children that in the event any child (1) predeceased Mrs. Hutton (2) without having executed the power of appointment by will and (3) without leaving surviving issue "then the share of the corpus or principal of the said trust estate of any one or more of said children so dying, or such part thereof as may not be affected by the respective wills shall be paid over and delivered by the trustee to the said Celeste M. W. Hutton, free, clear and discharged of any and all trusts created thereunder." One of the children, Una Louise Hutton, did predecease her mother but by will fully executed the power of appointment given to her by the deed of trust, disposing of her share of the principal in favor of other persons than Mrs. Hutton. This completely and effectively disposed of two-sevenths of the corpus of the trust estate and withdrew it from the trust some years before the death of Mrs. Hutton. It seems clear that there is no reasonable basis for the inclusion of this portion of the trust property in the valuation of Mrs. Hutton's gross estate.

The three other children of Mrs. Hutton survived her and upon her death their shares of the corpus passed to them respectively.

■ As above noted, Mrs. Hutton did reserve some contingent interest in her favor both in the income from the estate and in the corpus, but it will also be noted that the reservation of interest in the corpus was *very remote,* and did not in fact eventuate to her personal benefit. The question is whether this remote contingent interest makes five-sevenths of the corpus of the trust estate taxable as a part of Mrs. Hutton's gross estate. In this respect the present case differs from the deed of trust in the Cate Case (D. C.) 7 F. Supp. 40. In holding non-taxable a certain portion of the trust estate there involved, emphasis was put on the consideration that the settlor had not reserved any interest for his personal benefit in the particular portion of the trust estate held non-taxable. It was there said, at page 47 of 7 F. Supp.: "A study of the cases above cited leads to the conclusion that, where the donor parts with all personal interest in the property, except a life estate, and the transfer is not in fact made in contemplation of death, it is not rendered taxable under subsection (c) by reason of the nature or quality of the estate taken by the named beneficiaries, whether vested or contingent, subject to be divested, or contingent in law or in fact. Taxing statutes do not concern themselves with the niceties of conveyancing law. Klein v. United States, 283 U. S. 231, 234, 51 S. Ct. 398, 75 L. Ed. 996. Where the donor has reserved nothing for himself or his estate after his death, there is nothing to be transferred by his death that is taxable under this section of the act. Reinecke v. Trust Co., 278 U. S. 339, 348, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397."

The Cate Case was determined under the Revenue Act of 1926 (44 Stat. 9) which, however, in its applicable provision does not materially differ from the Act of 1924.

In the Cate Case recent decisions of the Supreme Court and other federal decisions applying the estate tax law to similar deeds of trust with varying provisions were considered with particular reference to the effect of the contingent nature of the interests taken by the beneficiaries and contingent reservations in favor of the donor. It is unnecessary to again review those cases. I reach the conclusion that Mrs. Hutton's con-

tingent reservation of personal interest in the corpus of the property was too remote and unsubstantial to make the property taxable as a part of her gross estate. In support of the conclusions reference may be made particularly to McCormick v. Burnet, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413, and Helvering v. Duke, 290 U. S. 591, 54 S. Ct. 95, 78 L. Ed. 521, affirming without opinion the decision of the Circuit Court of Appeals for the Third Circuit, Com'r of Internal Revenue v. Duke, 62 F.(2d) 1057, which in turn affirmed decision of the Board of Tax Appeals, 23 B. T. A. 1103, in favor of the taxpayer. And to these decisions should now be added the very recent case of Commissioner v. Wallace (C. C. A. 2) 71 F.(2d) 1002 (affirming 27 B. T. A. 902); certiorari denied by the Supreme Court October 15, 1934, 55 S. Ct. 117, 79 L. Ed. ——; Sargent v. White, 50 F.(2d) 410 (C. C. A. 1); Union Trust Co. v. United States (Ct. Cl.) 54 F.(2d) 152, certiorari denied 286 U. S. 547, 52 S. Ct. 500, 76 L. Ed. 1284; Hoblitzelle v. United States (Ct. Cl.) 3 F. Supp. 331, and Guaranty Trust Co. v. Blodgett, 287 U. S. 509, 53 S. Ct. 244, 77 L. Ed. 463, seem to be especially emphasized by counsel for the defendant as contrary decisions. As to these (all except the Blodgett Case reviewed in the Cate Case) it may be said that the Blodgett Case dealt with a state succession tax, not an estate tax; and the reserved interest in the trust in the Sargent Case was much more substantial than here; and the same may be said of the Hoblitzelle and Union Trust Co. Cases in the Court of Claims, and also that the latter are otherwise distinguishable.

■ I hold, therefore, that neither the Maryland real estate nor any interest in the trust fund should have been included in the computation of the estate tax. The calculation as to the amount of the recovery on this basis as submitted by the plaintiff is $84,704.50; while the defendant's computation on the same basis is $84,346.06. The difference between the parties in the amounts so calculated results from different figures taken by the parties respectively for the value of the Maryland real estate as finally included by the Commissioner in his computation of the tax. The plaintiff says the total valuation for this item that was included by the Commissioner was $708,796.77; while the defendant, for calculation of the amount now recoverable puts the item at $704,612.90. The difference between the two figures lies in the inclusion by the plaintiff in the valuation of an amount representing pro rata accruing rentals of the real estate, up to the time of Mrs. Hutton's death, which were required under the treasury regulations to be included although the particular rentals did not in fact actually fall due under the respective leases on the property until after Mrs. Hutton's death. As the item was in fact included in the tax paid at the higher figure, it seems entirely clear that recovery must be based on that figure.

■ There is the remaining point of limitations. The defendant contends that only *that portion* of the tax which was paid within four years prior to the date of the petition for refund (January 20, 1931) can be recovered. It is agreed by counsel for both parties that the applicable federal statute is R. S. § 3228, as amended by section 1012 of the Revenue Act of 1924, c. 234, 43 Stat. 342 (see also for later amendments title 26 USCA § 157 and note, giving effect to the last amendment of June 6, 1932) reading as follows: "Sec. 3228. (a) All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as provided in section 281 of the Revenue Act of 1924, be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax, penalty, or sum."

It will be noted that the limitation as provided for was "within four years next after the payment of such tax." Defendant's contention is that the phrase "such tax" should be construed to apply distributively to those portions of the whole tax which were paid within four years prior to the filing of the petition for refund; and therefore as applied to this case, the plaintiff's recovery must be limited to the sum of $29,195.22 paid January 22, 1927, which was the only portion of the whole tax paid by the plaintiff within four years before the date of the petition for refund. Plaintiff's contention, however, is that the phrase "such tax" means the tax as an entity and permits a recovery of the whole amount of the tax provided the petition for refund was filed within four years of the date of the payment of the last installment thereof.

The question thus raised is not new. It was very fully considered and decided adversely to the Government's contention by the Court of Claims in the case of Hills v. United States, 50 F.(2d) 302, adhered to on mo-

tion for rehearing, 55 F.(2d) 1001. And the same question was again decided against the Government by the Circuit Court of Appeals for the Third Circuit in United States v. Clarke, 69 F.(2d) 748, affirming judgment of the district court in 5 F. Supp. 292. And it was similarly decided by the Circuit Court of Appeals for the Second Circuit in United States v. Union Trust Company of Rochester, 70 F.(2d) 629, affirming the district court's opinion in 5 F. Supp. 259. In the last two cases certiorari was denied by the Supreme Court on October 8, 1934 (55 S. Ct. 99, 79 L. Ed. ——). Both cases contain fully reasoned opinions by the respective Circuit Courts of Appeal. See, also, Magoon v. United States (D. C. of Hawaii) 3 C. C. H. 9274, p. 8755, now pending on appeal in the Ninth Circuit. Despite this uniform current of adverse federal decision the Government earnestly contends that the question was wrongly decided and asks consideration anew of the point on the ground that the decisions in other Circuits are not technically binding in this Circuit.

I have carefully read and considered these several cases, with the exception of the Magoon Case which has not been officially reported. Even if I were disposed to take a different view of the matter I would hesitate to do so in view of the uniform result heretofore reached, including two fully considered cases in the Circuit Courts of Appeals. I am, however, satisfied that the proper conclusion has been reached in those cases. It may be that originally the question presented, as noted by the Court of Claims, 50 F.(2d) 304, was a difficult and doubtful question of statutory construction. But the legislative history on the subject up to and including the Act of June 6, 1932 (which is fully reviewed in the cases referred to), is certainly very persuasive of the conclusion reached by the courts. The matter was set at rest for the future by the 1932 Amendment directly affecting the time of filing petition for refund of estate taxes. See section 810, c. 209, of the Act of June 6, 1932, 47 Stat. 283, 284 (26 USCA §§ 1117a, 1120 and notes), making special provision for the time of filing petition for refund for estate taxes. Subsection (c), (26 USCA § 1117a) provided as follows:

"Title III of the Revenue Act of 1924 is amended by inserting after section 318 a new section to read as follows:

" 'Sec. 318½. The amount of any refund of the tax imposed by Part I of this title shall not exceed the portion of the tax paid during the four years immediately preceding the filing of the claim, or if no claim was filed, then during the four years immediately preceding the allowance of the refund.' "

But this amendment was expressly made not retroactive by subsection (d), (26 USCA §§ 1117a, 1120 notes), which provided: "Section 319 (b) of the Revenue Act of 1926, as amended by this Act, and section 318½ of the Revenue Act of 1924, as added by this Act, shall not bar from allowance a claim for refund filed prior to the enactment of this Act which but for such enactment would have been allowable."

It results, therefore, that the plaintiff is entitled to a verdict for $84,704.50, with interest at 6% (see Safe Deposit & Trust Co. of Baltimore v. Tait [D. C.] 3 F. Supp. 51, 61; Revenue Act of 1928, § 614 [26 USCA § 2614]) from the dates of the respective payments on account of the tax; that is, in this case, with interest at 6% on $28,474.61 from January 21, 1927, and on $56,229.89 from February 27, 1926.

I have refused defendant's requests for instructions Nos. 1 to 7, inclusive, and exceptions are noted therefor on behalf of the defendant.